UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>v.<br><br>Paige Howling Wolf,<br><br>        Defendant. | **MEMORANDUM IN SUPPORT OF SENTENCING**<br><br>Criminal Case: 1:20-CR-175 |

## I. INTRODUCTION

[1.] This case involves an extraordinarily difficult factual situation that in many ways epitomizes difficulties of life on the reservation. A young mother, subjected to past abuse at the hands of her stepfather and her significant others', who resorted to drug use to address her sense of hopelessness and loss. This addiction ultimately took over her life causing her to fail to care for her young children, resulting in the death of one of those children.

[2.] Paige Howling Wolf (hereinafter "Paige") has admitted her involvement in four (4) charges: (1) involuntary manslaughter in Indian Country, and charges (2), (3), and (4) child neglect in Indian Country. Paige is ultimately requesting from the court a sentence that punishes her for her actions (or failure to act) but also serves to ensure that she remain drug free, enables her to obtain an

education or trade, and also allows her the training to mother her remaining children.

[3.] Paige pleaded guilty to one count of involuntary manslaughter in Indian Country (Count 1) and three counts of child neglect in Indian Country (Count 2, 3, and 4). Child neglect in Indian Country in violation of 18 U.S.C. §§ 13 and 1153, and N.D.C.C. § 14-09-22 and 12.1-32-01; and involuntary Manslaughter in Indian Country in violation of 18 U.S.C. §§ 1112 and 1153.

[4.] The Defendant appeared on or about October 21, 2020 for an initial appearance and arraignment. Paige was ordered detained and had been held to answer for these charges since that time. Total, at the time of sentencing, Paige will have approximately nineteen (19) months incarceration.

[5.] A plea agreement was filed between the Plaintiff, United States of America, and the Defendant. The plea agreement called for Paige to plead guilty to counts one (1), two (2), three (3), and four (4). Under the terms of the agreement, the parties agreed under the advisory sentencing guidelines there is an upward adjustment for:

+2 Vulnerable Victim (USSG § 3A1.1(b).

The parties further agreed that there would be the following: (1) a two (2) level reduction for acceptance of responsibility; and, (2) a one (1) level downward adjustment for timely notification of the intent to enter a guilty plea. The pre-sentence investigation report (PSR) is in line with the total offense level of the plea

agreement. Docket #38, ¶ 50. Thus, both the PSR and the plea agreement place the total offense level at 17.

[6.]  Paige is free to recommend any sentence including a departure variance within the guideline range that she believes is appropriate, provided that she notifies the United States of her intent to do so within the time frame of filing a sentence memorandum, pursuant to court local rule 32.1(B). Undersigned counsel did obtain an extension for filing of a sentencing memorandum until May 16, 2022.

[7.]  Paige is requesting time served, followed by a period of supervised release. Alternatively, Paige is seeking placement in a half-way house for a period of two (2) years with an appropriate amount of supervised release.

## II. FACTUAL BACKGROUND

[8.]  Paige was first arrested on charges related to similar facts as these charges in Turtle Mountain Tribal Court. Paige admitted to the allegations and spent approximately three (3) months in incarceration in tribal custody. While serving that time, a Superseding Indictment and warrant were issued for her arrest while she continued to serve her tribal sentence. Based upon information and belief, Paige has been held on these charges specific to federal detention since October 20, 2020. Total, it appears Paige has spent approximately eighteen (18) months in jail on the federal charges. Paige has spent another approximately three (3) months attributable to the same charges in incarceration through tribal court.

[9.]  Paige is not an irredeemable criminal. She is not a violent person, but has undergone some very traumatic situations and did not have the knowledge to

navigate them on her own, and so Paige turned to narcotics. Paige has a minimal criminal history including no history of violent offenses.

[10.] Paige is a twenty-eight (28) year old woman born in Minot, North Dakota and she has four (4) dependents.

[11.] From a young age, Paige was subject to instability by an alcoholic mother and an absent father. Her stepfather was physically abusive if she stepped in when he was abusing her mother, all before the age of sixteen. When Paige was 16, her mother died of alcohol abuse and it was at this time that Paige began experimenting with recreational drugs. When Paige was 17, she married, and had her first three children. Her husband at the time had two convictions in tribal court for domestic violence and one conviction for physical assault. Paige left the marriage and then had two more children with an on again/off again boyfriend. This on again/off again boyfriend was who had been supplying her with her drugs. Paige is able to speak to her four surviving children frequently via phone and is doing her best to maintain a relationship with them.

[12.] At the time of the offense, Paige was struggling with drug use, specifically methamphetamine. This is not to say that her use of drugs excuses her behavior, instead the use of drugs goes some ways toward *explaining* her behavior, and why her actions - or failure to act – was outside of her character. She has gone through withdrawals and been sober since her arrest, and has expressed a desire for treatment and programming to help her stay sober.

4

[13.] In North Dakota, Paige's only remaining support was her grandmother, who died prior to the offense. She has two siblings in Kansas who offer support and Paige hopes to move closer to them in the future.

### III. OFFENSE LEVEL

[14.] A. <u>Objections to United States Sentencing Guideline Calculations</u>.

[15.] Paragraph 43: Paige maintains that the Counts should not be considered separate pursuant to USSG section 3D1.2. However, as the grouping did not result in a higher offense level, this objection is simply noted for the record.

[16.] Paragraph 15, 73 and 87: Paige objects to any restitution in that she has no ability to pay such restitution. Again, this is simply noted for the record.

[17.] B. <u>Objections to Factual Assertions Within the Pre-Sentence Report</u>.

[18.] Paragraphs 51 and 69 relating to "puncture marks" or "puncture sites": Both are objected to as lacking foundation, based upon hearsay, and not supported by the facts within the discovery. To the extent that the court considers the paragraphs for sentencing, Paige puts the government to their burden of proof. Specifically, Paige denies that she had puncture marks on her arms, had dried blood on her, and had puncture sites on her ankles. Paige contends that witnesses are able to attest to the inaccuracy of the asserted facts and that should the government/probation persist in such allegations that notice be given so Paige can present contrary testimony regarding the same should she see fit to do so. As these portions of the noted paragraphs are purportedly unnecessary for determination of

sentence, Paige urges that those offending portions be omitted in the final copy to the court.

## IV. <u>FACTORS FOR CONSIDERATION BY THE COURT</u>

[19.]   Title 18, United States Code Section 3553(a) provides that the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set out in paragraph (2) of that subsection.  Section 18 U.S.C. 3553(a) provides the following requisite seven factors to be considered by the court in determining the particular sentence to be imposed:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;

2. The need for the sentence imposed –

    a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. To afford adequate deterrence to criminal conduct;

    c. To protect the public from further crimes of the defendant; and

    d. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. The kinds of sentences available;

4. The kinds of sentence and the sentencing range established for –

    a. The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced, or

    b. In the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;

5. Any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

6. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7. The need to provide restitution to any victims of the offense.

Id.  18 U.S.C. section 3582(a) requires that the court consider the factors set out in 18 U.S.C. 3553(a), recognizing "that imprisonment is not an appropriate means of promoting correction and rehabilitation."  Id.  An analysis of the applicable factors in this case is set forth below.

1. **The Nature of the Offense and History and Characteristics of the Defendant.**

[20.]  Paige recognizes the severity of the charges and the results of her actions.  As noted in the PSR, Paige suffered severe emotional turmoil and problems after the incident originally happened.  See Docket 38, ¶ 68.  In this tragic circumstance, the fact remains that Paige has already been punished as a result of her actions because of the mental anguish the incident caused and will continue to cause her.

[21.]  Paige maintains that a series of courses such as alcohol and drug classes will better suit Paige rather than lengthy periods of incarceration.  As such, this need is supported by a term of probation/supervised release.  Paige had significant drug problems upon her arrest and also it is evident she required assistance with her parenting.

[22.]   Paige is not requesting that the court excuse her behavior, but that her future be considered.  Paige has four (4) children.  Those children will remain part of her life after her sentence is served in this matter.  A series of courses which will teach Paige to help function as a member of society and as a parent to her children will be far better long-term than simply a period of incarceration.  Thus, Paige is requesting supervised release, with proper programming to include: parenting classes, coping classes/mental health treatment, and drug/alcohol classes.

[23.]   Based on all the foregoing, Paige urges this court to place her on probation/supervised release.  Paige submits to this Court that time served, which is nearly two (2) years at this time including the time in tribal court, and placement on probation/supervised release with proper programming/education would be beneficial not only to her, but to society as a whole.

2. **The Need for the Sentence to Promote Certain Statutory Objectives.**

   a. **To Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment.**

[24.]   As set forth in the PSR, one of Paige's strengths is the fact she took responsibility for her actions and plead guilty both in the tribal case and here. Paige has expressed remorse for her actions.  In fact, as noted above, her depression and suicidal ideation is related to charges.  So severe was Paige's guilt, that she had trouble sleeping, was depressed, and contemplated suicide.  Clearly this is reflective of Paige's awareness of the seriousness of the offense.

[25.]   As noted above, the tribal time Paige has already served is approximately three (3) months. Paige urges this Court to apply U.S.S.G. §

5G1.3(d), which provides: "If subsection (a) does not apply, and a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment." U.S.S.G. § 5G1.3. Paige urges this Court to recognize that a reasonable interpretation of this guideline provision is that had she been sentenced in State and Federal Court simultaneously, that the sentence would have been concurrent, and as such, she should get credit for her tribal time as well as for her federal time. Although not expanded to include "tribal" terms of incarceration, Paige maintains that it is unconstitutional that the guideline provision not to include considerations of tribal time in incarceration.

### b. The Need to Afford Adequate Deterrence of Criminal Conduct

[26.]   In this case, based on the PSR, Paige urges the court to recognize that her poor choices are primarily related to her addiction issues and a difficult upbringing. The terms of incarceration already imposed upon Paige are sufficient punishment in this matter to deter further criminal conduct of the sort alleged here. Furthermore, a series of coursework-mental health-drug treatment would be more suited to deter such behavior than further incarceration.

### c. The Need to Protect the Public From Further Crimes of the Defendant.

[27.]   Paige urges the court to recognize that her best chance at a continued reformed life is with the help of proper treatment, classes, and counselling. Time

served for both the incarceration as well as probation/supervised release will achieve this goal.

### d. Defendant's Need for Vocational Training and Other Correctional Treatment in the Most Effective Manner

[28.] As set forth in the PSR, Paige does not have a high school diploma or GED. Paige's contention is that additional education is appropriate for her and will aid her in the years to come.

[29.] Based on the foregoing, Paige submits time served plus a period of supervised release would be appropriate.

### 3. Types of Sentences Available and 4. Range Established

[30.] In this case, the Court may impose a term of incarceration, probation (if Defendant's guideline range is accepted), supervised release as well as for fines and fees. The guideline range calls for a period of incarceration of between 24 and 30 months. Should this Court consider the period of tribal incarceration, Paige has already served twenty-two (22) months in prison. As noted above and as is supported by all items set forth above, Paige requests time served plus a period supervised release would be best suited for her in order to rehabilitate herself and get on a path toward healthy living and positive meaningful contributions to society including returning to her role as parent of her remaining children.

### 5. Policy Statements by Sentencing Commission

[31.] There are no current policy statements issued by the Sentencing Committee which would affect the sentencing of Paige unless already noted herein.

### 6. Avoiding Unwarranted Sentence Disparities

[32.]   Paige is the only Defendant in this matter.

**7.   Provision of Restitution to Victims**

[33.]   The government does appear to be seeking restitution in the amount of $5,705.00, which is due and owing Langhan's Funeral Homes, Inc. for the services of the child.  Paige objects to said restitution amount on the grounds that she simply does not have the ability to pay that amount.

## V.   CONCLUSION

[34.]   There is no longer a presumption that the advisory guidelines range is the correct sentence.  See United States v. Booker, 543 U.S. 220 (2005).  Therefore, Paige, by and through undersigned counsel, is requesting time served in this matter followed by probation/supervised release.

Dated this 16th day of May, 2022.

**JACKSON, THOMASON, WELDER & ARTHURS, INC.**
*Attorneys for Defendant*
400 East Broadway Avenue, Suite 51
Bismarck, ND 58501
Phone:  (701) 751-4847
Fax:  (701) 751-4845
Email: thomas@bismanlaw.com


*/s/ Thomas M. Jackson*
By:  Thomas M. Jackson (ND ID 05947)